UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Burley Foods, LLC,<br><br>         Plaintiff,<br><br>v.<br><br>Bluegrass Ingredients, Inc.,<br><br>         Defendant. | Case No. 21-cv-2160 (SRN/LIB)<br><br><br>**ORDER ON DEFENDANT'S MOTION TO COMPEL ARBITRATION AND DISMISS, OR, IN THE ALTERNATIVE, TO STAY PENDING ARBITRATION** |

Daniel Patrick Brees, Rock Hutchinson, PLLP, 120 S. 6th St., Ste. 2050, Minneapolis, MN 55402, for Plaintiff.

Charles Knapp and Terran Chambers, Faegre Drinker Biddle & Reath, LLP, 2200 Wells Fargo Center, 90 S. 7th St., Minneapolis, MN 55402, for Defendant.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on the Motion to Compel Arbitration and Dismiss or, in the Alternative, Stay Pending Completion of Arbitration Proceedings [Doc. No. 6] filed by Defendant Bluegrass Ingredients, Inc. Defendant moves to compel arbitration and dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Based on a review of the files, submissions, and proceedings herein, and for the reasons below, the Court denies the motion.

**I.   BACKGROUND**

Plaintiff Burley Foods, LLC ("Burley Foods") has filed this lawsuit against Bluegrass Ingredients, Inc. ("Bluegrass"), asserting a claim for violations of the Minnesota

1

Termination of Sales Representatives Act ("MTSRA"), Minn. Stat. § 325E.37 (2017). (Compl. [Doc. No. 1] ¶¶ 26–34.)

### A. Business Relationship Between Burley Foods and Bluegrass

Burley Foods is a Minnesota limited liability company with its principal place of business in Edina, Minnesota. (Compl. ¶ 1.) Burley Foods represents ingredient manufacturers and suppliers in the promotion, distribution, and sale of various food ingredients. (*Id*. ¶ 2.) In March 2013, Burley Foods entered into an agreement (the "Agreement") with Bluegrass, a nationwide ingredient manufacturer and supplier that specializes in flavor powders. (*Id*. ¶ 4.) Bluegrass is a Delaware corporation with its principal place of business in Kentucky. (*Id*. ¶ 3.)

The Agreement established that Burley Foods, on behalf of Bluegrass, would sell and promote the sale of all products manufactured by Bluegrass. (Agmt. [Doc. No. 1-1] ¶ 2.) In return, Bluegrass agreed to pay Burley Foods sales commissions. (*Id*. ¶ 3.) The term of the agreement was for one year and automatically renewed every March 14 for subsequent one-year terms. (*Id*. ¶ 4.)

The Agreement permitted either party to terminate the Agreement without cause, subject to 90 days prior written notice, or to terminate with cause immediately by giving written notice of certain events constituting cause. (*Id*. ¶ 4(b)–(c).) In addition, the Agreement provided that the laws of Kentucky governed its application and interpretation. (*Id*. ¶ 11.) With regard to any disputes between the parties, the Agreement stated, "Any controversy or claim arising out of or relating to this Agreement shall be settled by arbitration[.]" (*Id*. ¶ 13.)

For over eight years, Burley Foods and Bluegrass performed their respective obligations under the Agreement. (Compl. ¶ 16.) However, on April 30, 2021, Bluegrass informed Burley Foods that it was terminating the Agreement without cause, effective July 29, 2021. (*Id*. ¶¶ 22–23.) The termination letter did not offer Burley Foods an opportunity to address any reasons for termination, because Bluegrass provided no such reasons. (*Id*. ¶ 24.)

B.   **Minnesota Termination of Sales Representatives Act**

In 2014, the Minnesota Legislature amended the MTSRA, Minn. Stat. § 325E.37. (*Id*. ¶ 17.) Specifically, in subdivision 7, the statute prohibits the inclusion of certain contract terms, such as the choice of law of any state other than Minnesota or the waiver of any of the protections afforded by the statute. (*Id*.) Among the other protections of the MTSRA, it permits a manufacturer to terminate a sales representative agreement only for good cause, with 90 days' notice and an opportunity to cure the reasons for termination. Minn. Stat. § 325E.37, subd. 2 (1)–(2). In addition, it gives sales representatives the option to resolve any disputes through either arbitration or in a court of law. *Id*., subd. 5.

C.   **This Lawsuit and Defendant's Motion to Dismiss**

Burley Foods filed this lawsuit in October 2021, asserting that the MTSRA applies to the parties' annually renewing Agreement. (*See* Compl. ¶ 18.) It alleges that Bluegrass violated the statute by failing to provide any reasons for termination, failing to provide good cause, and even if it had provided good cause, failing to provide 90 days' written notice and the opportunity to cure any alleged deficiencies. (*Id*. ¶¶ 29–33.) As a result,

3

Burley Foods alleges it has incurred damages, including lost profit damages, likely in excess of $250,000. (*Id*. ¶ 34.)

In lieu of answering the Complaint, Bluegrass filed the instant motion. It argues that the MTSRA's non-waiver language does not apply to the terms of the Agreement requiring the parties to arbitrate any disputes. (Def.'s Mem. [Doc. No. 8] at 3.) Even if it did apply, Bluegrass contends the provision would be unenforceable as it would be preempted by the Federal Arbitration Act. (*Id*. at 4–5.) Accordingly, Bluegrass argues that because the Agreement covers the claim that Burley Foods asserts in this lawsuit, and the parties expressly agreed to arbitrate their dispute, the Court should compel arbitration and dismiss Plaintiff's lawsuit with prejudice. (*Id*. at 5.) If the Court declines to dismiss the action, Bluegrass moves in the alternative for a stay pending arbitration. (*Id*.)

## II.     DISCUSSION

### A.     Standard of Review

A motion to compel arbitration is analyzed either as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), or as a motion for summary judgment under Federal Rule of Civil Procedure 56, depending on whether "matters outside the pleadings" have been presented and considered. *City of Benkelman v. Baseline Eng'g Corp.*, 867 F.3d 875, 881–82 (8th Cir. 2017); *accord Seldin v. Seldin*, 879 F.3d 269, 272 (8th Cir. 2018). Because the only material before the Court are the pleadings, which include the Agreement attached as an exhibit to the Complaint, the Court analyzes this motion under Rule 12(b)(6).

When considering a motion to dismiss under Rule 12(b)(6), the Court accepts the facts alleged in the complaint as true, and views those allegations in the light most favorable

to the plaintiff. *Hager v. Ark. Dep't of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013). However, the Court need not accept as true wholly conclusory allegations or legal conclusions couched as factual allegations. *Id.* To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555.

### B.  Whether There is a Valid Arbitration Agreement

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 2, reflects a "liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). However, to benefit from this presumption, parties must "have contractually agreed to be bound by arbitration." *Shockley v. PrimeLending*, 929 F.3d 1012, 1017 (8th Cir. 2019) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)).

In deciding whether the parties have agreed to submit their dispute to arbitration, the Court must first consider whether a valid agreement to arbitrate exists. *United Steelworkers of Am., AFL-CIO-CLC, Local No. 164 v. Titan Tire Corp.*, 204 F.3d 858, 860 (8th Cir. 2000) (citing *Keymer v. Mgmt. Recruiters Int'l, Inc.*, 169 F.3d 501, 504 (8th Cir. 1999)). If a valid agreement exists, the Court then considers the scope of the agreement. *Id*. Courts apply "ordinary state law contract principles to decide whether parties have agreed to arbitrate a particular matter." *Keymer*, 169 F.3d at 504. The moving party bears the burden of proving a valid and enforceable agreement. *Shockley*, 929 F.3d at 1017.

Indeed, the Agreement the parties signed in 2013 contained an arbitration provision. (Agmt. ¶ 13.) Bluegrass does not dispute that Burley Foods is a sales representative or that the Agreement is a sales representative agreement. Nor does Bluegrass dispute that Burley Foods meets the geographic limitations of the MTSRA, which applies to sales representatives who, during a period of the agreement, are Minnesota residents or maintain a principal place of business in Minnesota. *See* Minn. Stat. § 325E.37, subd. 6(a)(1). Rather, the dispute here concerns whether the arbitration provision remains in force.

As enacted in 1990, the MTSRA provided certain procedural safeguards to sales representatives concerning notice of termination of their agreements with manufacturers, just as it does today. *See* Minn. Stat. § 325E.37 (1990). At the time of the statute's enactment, however, it lacked provisions concerning choice of law or the non-waiver of rights. *See id*. Thus, in 1994, in *Hagstrom v. American Circuit Breaker Corp.*, 518 N.W.2d 46, 49 (Minn. Ct. App. 1994), the Minnesota Court of Appeals held that a North Carolina choice of law provision in a sales representative contract, made in good faith, was enforceable against a sales representative under the MTSRA. The court found it "significant that the [MTSRA] does not contain a provision limiting choice of law provisions." *Id*. Similarly, in 2005, in *A.J. Lights, LLC v. Synergy Design Group, Inc.*, 690 N.W.2d 567, 569 (Minn. Ct. App. 2005), the Minnesota Court of Appeals found that where a sales representative agreement contained a valid arbitration provision, the MTSRA did not give the sales representative the option to bring a claim in court, stating that "had the legislature intended the MTSRA to limit a sales representative's ability to waive his or her right to sue in court, it could have expressly stated so."

As noted, in 2014, the Minnesota Legislature amended the MTSRA to prohibit the inclusion of certain contractual terms in sales representative agreements, including the choice of law of any state other than Minnesota, and to prohibit the waiver of any of the protections provided by the MTSRA, including the salesperson's choice of remedies. Minn. Stat. § 325E.37, subd. 7. Any contractual provisions to the contrary are considered "void and unenforceable." *Id.*, subd. 7(b). Thus, in subdivision 7, the Minnesota Legislature, whether by design or coincidence, addressed the lack of statutory specificity noted by the Minnesota Court of Appeals in *Hagstrom* and *A.J. Lights* by adding express language regarding choice of law and the non-waiver of any rights under the statute.

Bluegrass acknowledges that the *A. J. Lights* decision precedes the enactment of subdivision 7, but relies on that decision for the proposition that agreements to arbitrate are enforceable and that MTSRA's arbitration provision in subdivision 5 only applies when the parties' agreement is silent as to arbitration, which is not the case here. (Def.'s Mem. at 3–4.) The Court finds, however, that the plain language of MTSRA's arbitration provision is not limited to parties who lack an arbitration agreement, Minn. Stat § 325E.37, subd. 5, and the 2014 amendments to the MTSRA clearly addressed the issue of waiver—lacking in prior iterations of the statute—that was central to the court's decision in *A.J. Lights*.

Under § 325E.37, a sales representative alleging a violation of the MTSRA, as Burley Foods alleges here, has the option of submitting the matter to arbitration, or, prior to the arbitration hearing, bringing claims in a court of law. Minn. Stat. § 325E.37, subd. 5(a). The 2014 amendments, found in subdivision 7, were effective August 1, 2014, and

applied to sales representative agreements "entered into, renewed, or amended on or after that date." Minn. Stat. § 325E.37 (2014); *see also Hedding o/b/o Hedding Sales & Serv. v. Pneu Fast Co.*, No. 18-cv-1233 (JRT/SER), 2019 WL 79006, at *2 (D. Minn. Jan. 2, 2019) (stating that the MTSRA's "scope of application[] extend[s] only to agreements enacted, amended or renewed after August 1, 2014.").

The parties renewed the Agreement annually every March 14 until Bluegrass sent its termination letter in April 2021. (Compl. ¶¶ 19, 22.) Because the Agreement's arbitration provision would cause Burley Foods to waive its option of choosing between arbitration and litigation in court, in violation of the MTSRA, the Agreement's arbitration provision "is void and unenforceable." Minn. Stat. § 325E.37, subd. 7(a)–(b); *see also Hedding*, 2019 WL 79006, at *2 (holding that Ohio choice of law provision was null and void because the parties renewed their agreement after the effective date of subdivision 7). Thus, when Burley Foods and Bluegrass renewed the Agreement annually after subdivision 7's August 1, 2014 effective date, the arbitration provision was null and void. In other words, as of the March 14, 2015 renewal date, the Agreement contained no enforceable arbitration provision.[1] Because there is no valid arbitration agreement, Burley Foods

---

[1] The Court observes that although the choice of law provision is not at issue in this motion, the Agreement calls for the application of Kentucky law. (Agmt. ¶ 11.) However, subdivision 7 of the MTSRA requires the application of Minnesota law, rendering choice of law provisions for other states null and void. Minn. Stat. § 325E.37, subd. 7(a)–(b). While Bluegrass disputes the application of the non-waiver provision of subdivision 7(a)(2), it simultaneously appears to concede the application of subdivision 7(a)(1), as it relies on legal authority from Minnesota, but not Kentucky. (*See, e.g.*, Def.'s Mem. at 4; Def.'s Reply [Doc. No. 12] at 1) (citing *J.L. Lights*, 690 N.W.2d at 569).

cannot be compelled to arbitrate. *United Steelworkers*, 204 F.3d at 860 (citing *Keymer*, 169 F.3d at 504). Because the Court finds that Bluegrass has not met its burden of establishing the existence of a valid arbitration agreement, the Court need not address whether Plaintiff's claims fall within the scope of the agreement. Accordingly, Bluegrass's motion fails.

While Bluegrass argues that the denial of its motion would allow the MTSRA to preempt the FAA, the Court need not reach this issue. Bluegrass cites a 2017 U.S. Supreme Court decision, *Kindred Nursing Centers Ltd. Partnership v. Clark*, 137 S. Ct. 1421, 1426 (2017), in which the Court held that Kentucky's "clear statement rule," which required an explicit statement in a power of attorney authorization that the attorney-in-fact had the authority to waive the principal's state constitutional rights to court access and a jury trial, impermissibly disfavored arbitration agreements and was preempted by the FAA. As of March 2015, the Agreement here contained no enforceable arbitration provision. Moreover, unlike the clear statement rule in Kentucky, the MTSRA does not disfavor arbitration, as it permits sales representatives to resolve contractual disputes either through arbitration or through litigation. At the hearing on the instant motion, defense counsel argued that Burley Foods had, in fact, exercised its choice by agreeing to the arbitration provision when it signed and renewed the Agreement. But a sales representative's right to avail itself of potential remedies—under either the MTSRA or the Agreement here—arises only after an event gives rise to a claim. *See* Minn. Stat. § 325E.37, subd. 5(a) (addressing remedies for violations of the MTSRA); (*see also* Agmt. § 13 ("Any controversy or claim arising out of or relating to this Agreement . . . .").) Here, only after Bluegrass terminated

9

the Agreement did Burley Foods choose to seek remedies in a court of law, as the MTSRA permits.

Because the arbitration provision of the Agreement was void and unenforceable upon the Agreement's March 14, 2015 renewal date and each successive renewal, there is no valid arbitration provision. Accordingly, Defendant's motion is denied.

### III. CONCLUSION

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that

1. Defendant's Motion to Compel Arbitration and Dismiss or, in the Alternative, Stay Pending Completion of Arbitration Proceedings [Doc. No. 6] is **DENIED**.


Dated: August 2, 2022                                s/Susan Richard Nelson
                                                     SUSAN RICHARD NELSON
                                                     United States District Judge